THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ISRAEL COLÓN ROSA, WILFREDO CUEVAS RUIZ, and VÍCTOR FIGUEROA TORRES, Defendants and Appellants.

No. CR-66-358.     Decided October 15, 1968.

*Edna Abruña Rodríguez, E. Armstrong Watlington,* and *Enrique Miranda Merced* for appellants. *J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

An information was filed against Israel Colón Rosa, Wilfredo Cuevas Ruiz, and Víctor Figueroa Torres, for assault to commit murder, alleging that on August 8, 1961 with malice, deliberation, and a fixed intent to kill, they assaulted Francisco Olivo Cruz firing several revolver shots without wounding him. Based on the same facts informations were filed for violation of § 8 of the Weapons Law (felony) and for violation of § 6 of said Law (misdemeanor). All of them were convicted of the offenses charged.[1]

The Legal Aid Society which represents them in this appeal, assigns two errors: (1) that the court admitted in evidence the incriminating admissions made by one of the defendants at an "administrative hearing" held in connection with the facts of the case and (2) the court's error in refusing to transmit instructions to the jury on the offense of assault and battery, when it was thus supported by the evidence. Let us first turn to this second error.

Policeman Francisco Olivo testified that on August 8, 1961 he was on duty with another policeman and they were tipped that appellants were riding in a stolen car. The policemen parked the vehicle in which they were making the rounds at Villamil Street, Stop 18, and the witness continued alone towards Gaviota Street. Upon going across a small bridge he saw the three defendants in a Chevrolet automobile with the driver's door open and the interior light on. It was

---

[1] Only Israel Colón Rosa and Wilfredo Cuevas Ruiz appealed from the judgments.

about one o'clock in the morning. When they saw the witness who was dressed in civilian clothes and whom they knew, according to this testimony, they got out of the car and fired at him rapidly. The witness threw himself on the ground and from that position fired two shots at defendants. They went out running firing shots, without the witness knowing whether they were shooting at him or into the air. They were shooting with black revolvers with long barrels, and the detonations were of 38 caliber. He did not arrest the defendants there. The next day he was informed that Israel Colón Rosa had given himself up and that he had a bullet wound on a leg.

On cross-examination he said that appellants fired by giving "pulls" to the hand, they did not know how to shoot and had no experience as shooters. That the three got out by the same door, the driver's, they stood against a fence which was 4 feet away and fired. The witness was about 18 feet from the automobile and the defendants fled behind his back.

The foregoing is all the eyewitness evidence in the record as to how the facts of August 8 occurred and how the shots were fired. In its instructions to the jury, the trial court charged correctly on the offense of assault to commit murder defined in § 218 of the Penal Code. This section provides the following:

"Every person who assaults another with intent to commit murder, is punishable by imprisonment in the penitentiary not less than one nor more than fifteen years."

At the close of the instructions the defense requested the court to charge the jury on aggravated assault and battery.[2] The request was denied by the trial court as follows: (Record p. 297)

---

[2] In the course of the proceedings, the following incident occurred in the presence of the jury. The defense made the following question upon

". . . That instruction is specifically denied on two grounds: Because we believe that the assault is not in fact . . . because we understand that in these cases there is no evidence in any of the cases to consider that there was no assault and if by any chance you refer to the fact that there were no wounded persons, the fact that there were no wounded persons does not mean that there was no assault, and in the second place because we believe that there is no proof or evidence which might be considered or believed by the jury to believe that *since they fired the shots, the defendants had an intent other than to kill* nor that the defense denies . . . here, the evidence of the defense merely denies the fact of the shots and all the evidence of the People is that the shots were directly fired at the policemen, the revolver being a deadly weapon, *for which reason the inference, the only inference there is, in the absence of another explanation, is that when a revolver is fired at a person it is done with the intent to kill him.*"

---

cross-examining a witness: (Record p. 77)

"Q. That alleged assault you are talking about, did it occur after these citizens fled?"

The prosecuting attorney objected to the question because the word "alleged" had been used, affirming that the evidence showed that an assault had occurred.

"Judge: The jury may or may not accept the policeman's evidence, but the evidence which exists is that there was an assault. . . . If the jury gives credit to what the policeman says, it seems to me that that is an assault.

Mr. Velasco Gordils: Then it is an assault.

Judge: The court shall instruct the jury as to what verdict it might bring, for what offense, and those definitions, etc., shall be explained to them. It shall give instructions on all possible verdicts there might be on those points, but if credit is given to him, it is assault. What degree? We shall charge the jury in due time, but in point of fact the evidence is that there was an assault, so that the evidence before the jury, so far, without it being understood that they accept it, is that there was an assault.

Mr. Tirado Saltares: Your Honor, but the word 'alleged' should be permitted until the time of. . . .

Judge: What is assumed is the guilt until the commencement of the prosecution, after the prosecution, no, it has no legal validity, but the evidence is that there was an assault.

Mr. Velasco Gordils: The fact is that there is no evidence. . . .

Judge: Call it 'alleged' to avoid too much discussion on that point.

Prosecuting Attorney: Objection withdrawn."

■ The Act of March 10, 1904—33 L.P.R.A. § 821— provides that *"todo acto ilegal de inferir algún daño violento en la persona de algún semejante con la intención de causarle daño, cualquiera que sean los medios o el grado de violencia que se emplearen"* is an assault and battery. Section 1.

■ *"Toda tentativa para cometer una agresión, o cualquiera señal de amenaza que demuestre en sí o con palabras una intención inmediata acompañada de aptitud para cometer la agresión, será considerada como un acometimiento."* Section 1.[3]

■ Section 6 of said act provides that "An assault and battery becomes aggravated when committed under any of the following circumstances: . . .

"8. When committed with deadly weapons under *circumstances* not amounting to an intent to kill or maim."[4] (Italics ours.)

---

[3] The definition of this offense is understood better in the English language of its origin, which version must prevail according to *People* v. *Díaz,* 62 P.R.R. 477 (1943); *People* v. *Fonseca,* 62 P.R.R. 413 (1943):

"The use of any unlawful violence upon the person of another *with intent to injure him,* whatever be the means or the degree of violence used, is an assault and battery." (*El uso de violencia ilegal en la persona de otro con la intención de causarle daño, cualesquiera que sean los medios o el gardo de violencia usados*) . . . .

"Any attempt to commit a battery, or any threatening gesture showing in itself an immediate intention, coupled with an ability to commit a battery, is an assault." (*Toda tentativa de cometer una agresión—uso de violencia ilegal en otro—o cualquier gesto amenazante que demuestre en si mismo una intención inmediata acompañada de la habilidad para cometer una agresión, es un acometimiento.*)

[4] The term "assault *and* battery" therein should be read as assault *or* battery. *Lange* v. *People,* 24 P.R.R. 796 (1917). Aggravated assault exists as a separate offense. *People* v. *Matos,* 35 P.R.R. 788 (1926); *People* v. *Méndez,* 39 P.R.R. 590 (1929); *People* v. *Serrano,* 45 P.R.R. 888 (1933).

Consistent with the foregoing and with the original version of the definition of this offense, the repeated statements of the judge made before the jury (copied in the preceding footnote 2), to the effect that if the jury gave credit to the policeman's testimony an assault had been established there, are ambiguous. The jury, duly charged, could understand that an aggravated assault had been proved.

594

The refusal of the trial court to instruct the jury on aggravated assault and battery or aggravated assault under the assumption that when a revolver is fired at a person there is no other inference but that it was done with the intent to kill him, the revolver being a deadly weapon, was in violation of the act previously set forth and of our doctrine.

The revolver is a deadly weapon. *People* v. *Dávila*, 23 P.R.R. 313 (1915). Subdivision 8 of § 6 of the Assault and Battery Act, in referring to deadly weapons in order that an assault and battery or an assault may become aggravated, does not exclude the weapon known as a revolver. What it excludes are the *circumstances* partaking of the intent to kill or maim in the use of those deadly weapons. On the other hand, § 1 of said Act, in defining the offense of assault and battery, does so expressly in terms of any means or degree of unlawful violence used with the intent to injure another person. Among the means of using unlawful violence upon the person of another, the use of a revolver is not excluded.

█ It was an error of law to hold, in the light of §§ 1 and 6 of the Assault and Battery Act, that since the policeman had been fired at with revolvers, the facts fell outside the scope of the "intent to injure" of the offense of assault and battery to constitute *solely* the "intent to commit murder" of § 218 which is nothing more than the intent to kill with malice aforethought.—Section 199 of the Penal Code.[5]

---

[5] As a matter of fact: *People* v. *Lange*, 24 P.R.R. 210 (1916); *People* v. *Matos*, 35 P.R.R. 788 (1926); *People* v. *Méndez*, 39 P.R.R. 590 (1929); *People* v. *Serrano*, 45 P.R.R. 888 (1933); *People* v. *Enamorado*, 37 P.R.R. 242 (1927); *People* v. *Cruz*, 25 P.R.R. 302 (1917); *People* v. *Haddock*, 43 P.R.R. 722 (1932); *People* v. *Gómez*, 57 P.R.R. 719 (1940); *People* v. *Cartagena*, 54 P.R.R. 827 (1939); *People* v. *Solares*, 19 P.R.R. 423 (1913), constitute examples of prosecutions and convictions for aggravated assault and battery and aggravated assault, where a defendant fired shots at another person with a firearm.

The difference between assault with intent to commit murder (§ 218) and aggravated assault and battery lies only in the intent with which the assault is made. In the assault of the first case, a specific intent to kill must be proved as a fact. *People* v. *Palóu*, 80 P.R.R. 351, 375 *et seq.* (1958) and cases cited therein, *People* v. *Solares, supra; People* v. *Gómez*, 14 P.R.R. 124, 129 (1908) ; "But to constitute an attempt to murder the wrongdoer must specifically intend to take life"; and it must be alleged and satisfactorily proved; *People* v. *District Court*, 74 P.R.R. 783, 799 (1953).

In the assault of the second case, the intent to injure another person must be proved. Hence the offense of aggravated assault and battery is a lesser offense necessarily included in the assault of higher offense of § 218. *People* v. *Pérez*, 65 P.R.R. 653 (1946), *People* v. *Gómez, supra.*[6]

In either case, the intent to commit murder—to kill with malice aforethought—and the intent to inflict bodily injury are subjective mental elements which are inferred from all the proven facts and circumstances under which the assault is perpetrated.

Under the circumstances of this case where, according to the record some 19-year-old youths fired at a policeman in the manner that the policeman testified that they

---

[6] In *People* v. *Cruz Collazo*, 95 P.R.R. 638 (1968), we said, in the light of the facts:

"Under the typical rule of law which also forms a part of our doctrine, in the prosecution under an information of assault to commit murder, the jury could return in this case, instead of a full acquittal or conviction of that offense, a verdict of assault to commit manslaughter or of aggravated assault and battery, these offenses of lesser degree being embraced or included within the greater offense charged against him. Because that is the applicable law, the court correctly gave instructions thereof in this case." (Citations.)

Section 286 of the Code of Criminal Procedure—1935 ed.—in force when the trial of this case was held, as well as Rule 147 of the Rules of Criminal Procedure now in force, have provided that the jury may find the defendant guilty of any lesser offense the commission of which is necessarily included in that with which he is charged.

fired the shots, in denying the requested instructions of aggravated assault and battery under the assumption that to shoot with a revolver at another person only entails the intent to kill, the trial court divested the jury of its power to determine as a matter of fact whether there was aggravated assault and battery, or aggravated assault, and if there was an assault, whether it was carried out with the intent to kill or to cause bodily injury.[7]

The jury was divested of its right to determine, as trier of the facts and pursuant to subdivision 8 of § 6 of the Assault and Battery Act, whether the *circumstances* under which the shots were fired entailed the intent to kill or maim, or whether they did not entail such intent.

The record shows another prejudicial error in the instructions, which although not pointed out on appeal, defendants' express objection to the same appears in the record.

As it was said at the beginning, the information charged that appellants, with malice aforethought, and deliberation, and with a firm and determined intent and purpose to kill, assaulted the human being, Francisco Olivo Cruz firing several revolver shots at him without wounding him. Referring to that information the trial court instructed: (Record p. 250)

"It is alleged from the information as a whole, in the manner it is drafted, that there was a conspiracy among them, a conspiracy to attack the policeman.

"Well. A conspiracy at law, for the purposes of the criminal offense, is like a partnership, the only thing that, unlike the commercial, or industrial, or lawful partnerships, this is an unlawful partnership, and it is an unlawful partnership, because it involves *malice* and the *purpose* of performing an unlawful

---

[7] *Cf: People* v. *Montoya Montoya,* 95 P.R.R. 687 (1968), where, in view of the contention that the conviction should have been for the lesser offense of aggravated assault and battery we concluded that there was no reason to disturb the *weighing of the evidence* made by the trial judge as to an intent to commit murder.

deed, *an unlawful purpose which is that of attacking a person with the intent of killing him.*

"Like the partnership or like all partnerships, then, the acts performed by one of the partners . . . the acts of one of the partners performed in the course of the business, in this case the unlawful business, are . . . benefit or prejudice the other partners in said conspiracy in such a manner that all are liable for the acts of one and one is liable for the acts of all provided those acts have been carried out within the end and purpose of the partnership."[8]

"Whether or not there was a conspiracy is a question of fact which the jury must determine in accordance with all the circumstances of the case.

"For a conspiracy to exist it is not necessary, it is not indispensable that a meeting has been held at a place and that a decision has been reached or that a scheme has been planned. It may arise suddenly, it may arise even while the criminal transaction is being carried out, if some perform acts for the benefit of the others or from the acts as a whole it is inferred that there is a common end or purpose among them, well, this is conspiracy.

"Now then it must be explained to you that because of the nature of the transaction in this case especially in this case of the eighth there was certain evidence that these defendants were tampering with a car, there was a certain complaint as to that car, that the car had been stolen.

"The fact that a conspiracy in connection with the stealing of the car might have existed does not mean that said conspiracy necessarily existed for the offense of assault to commit murder, which is an independent transaction, unless the members of the jury *do not* understand, as a question of fact, that the transaction or that the conspiracy continued, *that having previously commenced it continued for the purposes of repelling the police's effort for arresting them and thus being able to recover the fruits of the crime previously committed* . . . but if the gentlemen of the jury would understand *that even though there was a conspiracy in connection with the stealing of the car* and that said conspiracy ended and appeared later and that it arose to escape

---

[8] The foregoing perhaps explains the reason why the prosecuting attorney himself, having presented as part of his evidence an extrajudicial testimony made by defendant, Israel Colón Rosa, entirely exculpatory, as to him, of the shots charged and of the use of the weapon, the jury found him likewise guilty of such acts.

the police, *as the evidence of the prosecuting attorney tends to explain,* it was an independent thing which is not an extension *of that previous criminal act* but that it was something that arose suddenly and that in relation thereto there was no meeting of the minds, then the jury would understand that no . . . then the jury shall understand that there was no conspiracy as to the offense of assault to commit murder, even though a conspiracy had existed among them *for the stealing of the automobile, because they are not here to answer for the stealing of the automobile,* and they are answering for . . . only for the offense of assault to commit murder; but if the jury believes, as a result of the evidence and of all the facts, *that part of the conspiracy of the stealing of the automobile* consisted in meeting also any effort of the police *to interrupt that act of the stealing of the automobile* and that the one was the continuation of the other, then, the jury may understand that the conspiracy extended as far as conspiring in the offense of assault to commit murder." (Italics ours.)

Conspiracy is a substantive lesser offense, punished in § 62 of the Penal Code—1937 ed.—as amended by Act No. 54 of 1948. "If two or more persons conspire: (1) to commit any crime; (2) . . . ."

In *People* v. *Berenguer*, 59 P.R.R. 79 (1941), the latter was charged, jointly with other persons, with murder in the first degree because on the occasion of a commemorative public act, with deliberation, premeditation, by lying in wait, hiding behind the public who were watching, and with the specific intent to kill, fired shots at Governor Winship, killing Colonel Luis A. Irizarry.

Berenguer having been convicted, he assigned as error the admission of certain evidence concerning facts not alleged, evidence of a meeting of several persons held some days before and presided by Berenguer, in which it was decided to obstruct the act and to kill the Governor. Deciding this contention on admission of evidence we said—p. 88— that in the manner in which the commission of the offense was charged the information embodied the allegation of a

conspiracy and the evidence challenged related to the same.

In *People* v. *Castro*, 75 P.R.R. 630 (1953), murder in the first degree in the perpetration of arson was charged and it was alleged that "the three defendants, acting by virtue of a common agreement among themselves" illegally killed, "the said fire having been conceived and planned by the three defendants among themselves."

Considering another contention with respect to the admission of evidence on separate acts of some of the codefendants, we pointed to the evidence in the record showing a previous conspiracy or agreement of the three to commit arson on the commercial establishment and to collect the insurance. In both cases we decided questions as to the admission or exclusion of evidence under the stated circumstances.

Even though we would agree with the Superior Court that in the circumstances of this case the information alleged a conspiracy to kill, *cf. People* v. *Berenguer, supra,* there is no competent legal evidence that appellants conspired among themselves to steal *that* automobile in which they were, as the crucial point in order to ask the jury to determine whether or not the said initial conspiracy continued until the act of the shots "for the purposes of repelling the police's effort for arresting them and thus being able to recover the fruits of the crime [larceny] previously committed"; nor is there any basis in the record to ask the jury to determine "that part of the conspiracy of the stealing of the automobile consisted in meeting also any effort of the police to interrupt that act of the stealing of the automobile and that the one was the continuation of the other," and if the jury determined it so, it could "understand that the conspiracy extended as far as conspiring in the offense of assault to commit murder."

■ The detailed instructions on conspiracy to commit a previous offense of larceny for which appellants were not on trial constituted an error. *People* v. *Túa*, 84 P.R.R. 37

(1961). The emphasis put on said previous offense, which remained tied up with that of assault through the conspiracy informed to the jury, had a direct effect as to the element of the intent with which the shots were fired. Especially considering the omission of charging on aggravated assault and battery or aggravated assault.

Considering the defendants' objections, the trial court invoked in the record *People* v. *Márquez,* 45 P.R.R. 322 (1933) as an authority to support the instructions given on conspiracy. *People* v. *Márquez* does not support such instructions. Therein the information charged two persons with having committed mayhem on another person by assaulting and battering the latter with a bat. Upon charging the jury the court called the attention of the jury to the fact that two persons were accused in the case, and proceeded to instruct them (45 P.R.R. 327 (1933)) that according to § *36* of the Penal Code, "all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid or abet in its commission, *are principals in any crime so committed.*"

The giving of instructions on said § 36 was alleged there as an error, "as the information did not charge that the defendants had 'acted jointly' or moved by 'a common purpose'." Also that the court used the phrase "acting jointly" upon addressing the jury in the absence of such allegation (p. 327).

We held that when two persons are charged as principals or coauthors of the act—the case at bar—it is correct to instruct on the provisions of § 36.[9] Rejecting the contention of error, we said, at p. 329, "The common purpose or con-

---

[9] Section 36. "All persons concerned in the commission of a crime whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, . . . or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed."

certed action to which the defense refers, is only required for certain crimes, such as that of conspiracy."

The *Márquez* case, it can be noted, does not involve a problem of conspiracy.

What we have stated here requires the granting of a new trial. We shall not discuss in detail the first error assigned concerning extrajudicial incriminating statements made by the defendants. Israel Colón Rosa was called to testify at an administrative investigation carried out by the police on these same facts. He was not offered immunity nor was advised as to his right not to incriminate himself or told that his statement could be used against him. In that testimony Colón Rosa incriminated himself insofar as he placed himself in the automobile and together with those who fired although he denied having done so. He accused the other two defendants of firing the shots.

The jury heard the testimony of a Police Lieutenant on the incriminating statements of the other appellant. All the foregoing went directly to the jury without the court making a determination first with respect to the voluntariness and compliance with the other applicable constitutional guarantees; under the view that they were not confessions. They could have been confessions, but we need not discuss that now. At the new trial to be held the trial court shall consider that aspect in conformance with the rules of law applicable at present. It shall bear in mind, inclusive, the provisions of Rule 91, now in force, of the Rules of Criminal Procedure, on separate trials if the People is going to present extrajudicial statements made by a defendant which incriminate his codefendant.[10]

■ Nothing of the foregoing should be understood as if we are deciding that the offense in question is aggravated

---

[10] In this case one of the three defendants requested separate trial and it was denied. *Cf. Reyes* v. *Superior Court,* 84 P.R.R. 27 (1961).

assault or assault to commit murder. We remand the case for a new trial because we find that an important part of the instructions to the jury is erroneous. That is, that part where it is said that when a firearm is fired the only inference that can be made is that intent to kill exists. That, clearly, is not correct.

The judgments convicting the defendants of assault to commit murder are reversed. The judgments on carrying and possession of weapons are affirmed.

Mr. Justice Torres Rigual did not participate herein.